ALLEN, APPELLEE, *v.* LEE, APPELLANT.

(No. 53102 — Decided
December 28, 1987.)

*Barbara E. Powell,* for appellee
Doris Allen.

*Darryl Niles,* for appellant Andrew Lee.

MARKUS, J. The defendant-landlord appeals from a $9,000 judgment in favor of the plaintiff-tenant, for failing to maintain the leased property in a habitable condition. He argues that the trial court admitted two unauthenticated exhibits and improperly instructed the jury, and that the jury's verdict was excessive. The jury's verdict exceeded the prayer of the plaintiff's complaint, so we modify the judgment accordingly. As so modified, we affirm the trial court's judgment.

I

The tenant's complaint asserted that the landlord breached his duties under the lease and R.C. 5321.04. It also alleged that he failed to provide habitable housing, and refused to reimburse her security deposit and a rental overpayment she made.

The trial court approved a statement of the proceedings at the trial as the record on appeal, pursuant to App. R. 9(C). The tenant corroborated her own testimony with testimony from her former landlord, her seventeen-year-old daughter, three friends, a city housing inspector, and cross-examination of the landlord. The landlord and his repairman friend testified for the defense.

Undisputed exhibits established that the plaintiff-tenant and the county housing authority jointly leased the defendant-landlord's house for the tenant's occupancy for one year. The housing authority agreed to pay $226 and the tenant agreed to pay $46 toward the total $272 monthly rent. The tenant made a $50 security deposit.

Four months later, the housing authority terminated its payments, citing seventeen alleged violations by the landlord of his agreements with the housing authority. The claimed violations concerned physical defects and unsanitary conditions at the leased property. Within the following month, the tenant vacated the premises. Six weeks after leaving, the tenant filed this action for damages.

The tenant's witnesses described the following adverse conditions: dirt and grime throughout, accumulated rubbish in the basement, rotting porch floors, roof soffits which needed paint, broken windows, large holes in interior walls, holes to the basement in the bathroom floor and under the kitchen cabinet, missing drawers and glass panels for the dining room cabinet, a corroded bathtub with peeling enamel that would not drain, broken water pipes in the basement that precluded the tenant's use of her washing machine, stained and rusty sinks, rat and roach infestations, and a badly maintained yard.

The tenant said the landlord promised to replace missing fixtures, plaster and paint walls, repair broken windows, and clean the house thoroughly before she occupied it. Although the landlord did install promised carpeting, he failed to provide the remaining repairs. Despite her re-

peated complaints about the property's deficiencies, the landlord did nothing to remedy most of them and responded abusively. He eventually replaced the bathtub, but the replacement tub was in equally poor condition.

The tenant paid both her $46 share and the housing authority's $226 share of the first month's rent. The housing authority paid its share for that month and all succeeding months. The tenant did not pay her share of the remaining three months' rent. The landlord refused to refund the tenant's remaining $88 overpayment or her $50 security deposit, and provided no explanation for retaining her security deposit.

The tenant said she remained in the landlord's house, despite its deficiencies, because she lacked funds to move without the county housing authority's approval. She claimed that the conditions there caused her emotional distress which led to her hospitalization for ten days. When the housing authority terminated the lease, it allowed her to move elsewhere. She supplied receipts for $175.44 in moving expenses.

The landlord denied that he promised any repairs that he failed its make. He asserted that the house was in a "decent, safe, sanitary condition" when he rented it, and complied with the city's housing code. His repairman friend testified that he installed new water lines in the basement and helped the landlord replace the bathtub.

The jury returned a general verdict in favor of the plaintiff-tenant for $5,000 compensatory damages and $4,000 punitive damages. In a separate ruling, which the landlord does not contest here, the trial court ordered the landlord to pay the tenant $2,820 as attorney fees.

## II

The landlord's first assignment of error asserts that the $5,000 compen-satory damages and the $4,000 punitive damages are excessive. The Supreme Court recently established the measure of damages for part of the tenant's claims in *Smith* v. *Padgett* (1987), 32 Ohio St. 3d 344, 513 N.E. 2d 737. Paragraph one of the syllabus in *Padgett* states:

"Where a landlord breaches a promise to make repairs to the leased premises and the tenant does not elect to make the repairs, the measure of damages is the difference between the rental value of the premises in their unrepaired condition and what the rental value would have been had the promised repairs been made. The stipulated rent amount is presumptive evidence of the rental value of the premises as repaired, but it is not conclusive."

The tenant provided no evidence about the rental value of this house without the promised repairs, so she could not recover under that measure of damages. However, the *Padgett* opinion did not address tenants' claims for "breach of a covenant of quiet enjoyment, breach of a warranty of habitability, or breach of any statutory duty under R.C. Chapter 5321, except as pertains to their security deposit." *Id.* at 347, 513 N.E. 2d at 740, fn. 1. To the extent that these damages relate to claims for a breach of the lease, general contract principles govern. R.C. 5321.12.

The tenant's contract damages here include her expenditures in reliance on the landlord's promises. Cf. *White* v. *Nemastil* (1985), 29 Ohio App. 3d 1, 6, 29 OBR 1, 6, 503 N.E. 2d 189, 195; 3 Restatement of the Law 2d, Contracts (1981) 102, Section 344(b). The evidence shows that she paid $175.44 for her premature move from the landlord's property, $88 for unearned rent, and $50 as a security deposit. Her total reliance damages were $313.44. She was also entitled to $50

statutory damages for the landlord's failure to return her security deposit without justification or explanation. R.C. 5321.16(C); *Smith* v. *Padgett, supra,* at 348-349, 513 N.E. 2d at 741.

The tenant also claimed compensatory damage for emotional distress she suffered from living in the leased property. She cannot recover damages for emotional distress from a breach of contract, unless the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result. *Brown Deer Restaurant, Inc.* v. *New Market Corp.* (Mar. 28, 1985), Cuyahoga App. No. 48910, unreported; Restatement of the Law 2d, Contracts (1981) 149, Section 353. A residential lease lacks that special emotional significance. *Id.*

The tenant can also recover for physical injury caused by the landlord's negligence in breaching its statutory duty to provide suitable premises. R.C. 5321.04; *Anderson* v. *Ceccardi* (1983), 6 Ohio St. 3d 110, 114-115, 6 OBR 170, 174-175, 451 N.E. 2d 780, 784; *Shroades* v. *Rental Homes* (1981), 68 Ohio St. 2d 20, 22 O.O. 3d 152, 427 N.E. 2d 774, syllabus.

She could recover for her emotional distress with proof that the negligently inflicted distress produced an emotional injury which is both serious and disabling. Cf. *Yeager* v. *Local Union 20* (1983), 6 Ohio St. 3d 369, 373-374, 6 OBR 421, 425, 453 N.E. 2d 666, 670; *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72, 6 OBR 114, 451 N.E. 2d 759, paragraph two of the syllabus; *Schultz* v. *Barberton Glass Co.* (1983), 4 Ohio St. 3d 131, 4 OBR 376, 447 N.E. 2d 109, syllabus. She did not need expert medical testimony to establish that the landlord's conduct caused her emotional injury, if other evidence sufficiently demonstrated its gravity and its cause. *Paugh* v. *Hanks, supra,* at 80, 6 OBR at 121, 451 N.E. 2d at 767; *Foster* v. *McDevitt* (1986), 31

Ohio App. 3d 237, 239, 31 OBR 520, 522, 511 N.E. 2d 403, 406.

In this case, the plaintiff was a fifty-eight-year-old woman who suffered from multiple physical disabilities. She testified that the landlord's conduct and the conditions at his property caused her "fright, humiliation, anxiety, crying, nervousness, insomnia, and aggravation." She could not recover for the reported hospitalization without medical evidence that it was reasonably necessary. *Wagner* v. *McDaniels* (1984), 9 Ohio St. 3d 184, 185, 9 OBR 469, 470, 459 N.E. 2d 561, 563. However, the described hospital care supported her claim that her emotional injury was serious and disabling.

The tenant's daughter and two other witnesses confirmed the tenant's emotional reaction to the rats and other adverse conditions there. No contrary evidence disputed her extreme emotional distress. The tenant's evidence sufficiently supported a finding that the landlord's negligence caused her to suffer a serious and disabling emotional injury. We cannot say that a $5,000 verdict was excessive as compensatory damages for the described emotional injury and the other $363.44 damages.

We need not determine whether the record supports a finding of malice which justified punitive damages. The tenant's evidence apparently showed the landlord's persistent, protracted, and abusive response to her requests that he comply with the lease and his promises. That evidence might support an award of punitive damages. Cf. *Brookridge Party Center, Inc.* v. *Fisher Foods, Inc.* (1983), 12 Ohio App. 3d 130, 131-132, 12 OBR 451, 453, 468 N.E. 2d 63, 67.

However, the $5,000 verdict for compensatory damages exceeded the amount which the tenant could recover for both compensatory and punitive damages. Her complaint alleged four

"claims" which respectively sought monetary damages in the sums of $1,320, $3,000, $138 and $100. Each claim also sought unspecified "punitive damages, attorneys fees, interest and costs." The total compensatory and punitive damages cannot exceed the total amount sought in the plaintiff's complaint, subject to its amendment at least seven days before trial. *Bishop* v. *Grdina* (1985), 20 Ohio St. 3d 26, 28-29, 20 OBR 213, 214-215, 485 N.E. 2d 704, 705-706.

Therefore, the tenant's total recovery for compensatory and punitive damages in this case cannot exceed $4,558. To that limited extent, we sustain the landlord's first assigned error. Consequently, we modify the judgment by reducing the total compensatory and punitive damages, excluding attorney fees, to that amount.

### III

The landlord's two remaining assignments of error lack merit. His second assignment complains that the court received exhibits that purport to be letters he received, without proof that he received them. The record does not show that he objected to either exhibit, and their receipt in evidence did not constitute plain error. Evid. R. 103(A)(1); *State* v. *Draggo* (1981), 65 Ohio St. 2d 88, 92-93, 19 O.O. 3d 294, 296-297, 418 N.E. 2d 1342, 1347.

His third assignment asserts that the court improperly asked the jurors whether they intended to award monetary damages when they returned an apparently incomplete verdict. Nothing in the record indicates that any part of the challenged scenario ever occurred. Absent a contrary demonstration from the record, we must presume regularity in the trial court's proceedings. *Fant* v. *Stewart* (May 9, 1985), Cuyahoga App. No. 49089, unreported.

We overrule the landlord's second and third assignments of error and affirm the trial court's judgment as modified in our discussion of his first assignment.

*Judgment accordingly.*

KRUPANSKY, P.J., and J. V. CORRIGAN, J., concur.