**Grote**
v.
**J.S. Mayer and Co., Inc.**
*[Cite as 4 AOA 4]*

*Case No. C-890170*
*Hamilton County (1st)*
*Decided June 6, 1990*

*Robert W. Grote, in propia persona, 2355 Van Leunen Drive, Cincinnati, Ohio 45239.*

*Rendigs, Fry, & Kiely & Dennis and David W. Peck, Esq., 900 Central Trust Tower, Cincinnati, Ohio 45202, for Defendants-Appellees.*

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the assignments of error, the briefs and the arguments of the parties.[1]

Robert Grote appeals from the trial court's grant of summary judgment in favor of defendants-appellees J. S. Mayer and Company, Inc., and James S. Mayer, and from its denial of Grote's cross-motion for summary judgment, on his claim alleging that Mayer, a licensed industrial psychologist, was liable for negligent counseling rendered to him in March 1975 and February 1976. Grote's first assignment of error raises issues concerning the necessity of expert testimony in cases involving malpractice and negligent infliction of emotional distress in the field of psychology, and whether Grote, by having acquired knowledge through personal investigation and research, could provide the expert testimony himself. Grote's second assignment of error is addressed to the trial court's denial of his motion for summary judgment, but merely reiterates the arguments made in his first assignment of error.

Grote first sought vocational counseling from Mayer in March 1975, when Mayer gave him a series of vocational-skills tests. Grote met with Mayer four more times in the period from March 1975 to February 1976, and contacted him by telephone most recently in the fall of 1982. Grote claims, among other things, that Mayer failed to refer him to a clinical psychologist for treatment of his mental illness and that Mayer prevented him from seeking appropriate treatment and aggravated his condition.

On April 22, 1986, Grote filed his complaint against the defendants, claiming they were responsible for injuries related to his ongoing mental illness. In the course of the proceedings, Grote identified Roger H. Fisher, Ph. D., as his expert witness. In his deposition on August 7, 1987, however, Dr. Fisher exculpated the defendants from any liability, stating that he did not believe Mayer's conduct to have any causal connection with Grote's illness. During a hearing on the parties' cross-motions for summary judgment, the trial court gave Grote the opportunity to obtain another expert witness, apparently in consideration of Grote's *pro se* status and the fact that Dr. Fisher himself had been treating Grote for the past several years. Grote did not avail himself of this opportunity, arguing instead that either he was qualified as an expert himself or that expert testimony was not required to prove causation in this case. The trial court then granted summary judgment in favor of the defendants.

In his first assignment of error that the trial court erred by granting summary judgment in favor of the defendants, Grote reiterates the arguments made before the trial court, that either he was qualified to provide expert testimony with regard to the causation of his mental illness, or that no expert testimony was required to prove causation. We do not agree with either contention.

Expert testimony is usually necessary to establish the recognized standards of the medical community by which the defendant's performance is measured in medical-malpractice cases, and the failure to establish those standards is fatal to a plaintiff's presentation of a *prima facie* malpractice claim. *Bruni v. Tatsumi* (1976), 46 Ohio St. 2d 127, 346 N.E.2d 673. An exception to the general rule has been recognized where the standard of care is sufficiently obvious that nonprofessionals can reasonably evaluate the conduct. *Whiteleather v. Yosowitz* (1983), 10 Ohio App. 3d 272, 461 N.E.2d 1331. Issues involving the causation or aggravation of mental illness have also been determined to involve a field of scientific inquiry where expert medical testimony is indispensable. *Culp v. Federated Department Stores, Inc.,* (1965), 11 Ohio App. 2d 165, 229 N.E.2d 100.

Grote argues that because his complaint included a claim for negligent infliction of emotional distress,[2] expert testimony was not required, in that respect, to withstand a motion for summary judgment, citing *Paugh v. Hanks* (1983), 6 Ohio St. 3d 72, 451 N.E.2d 757. In *Paugh,* the Supreme Court of Ohio held that where a bystander to an accident states a cause of action for negligent infliction of serious emotional distress, the emotional injuries sustained must be found to be both serious and reasonably foreseeable in order to allow a recovery. *Id.* at paragraph three of the syllabus. The court observed in *Paugh* that, with respect to questions of

proof, expert medical testimony can assist the judicial process in determining the gravity of the emotional injury, but that:

"[l]ay witnesses who were acquainted with the plaintiff, may testify as to any marked changes in the emotional or habitual makeup that they discern in the plaintiff after the accident has occurred. The jurors themselves, can refer to their own experiences in order to determine whether, and to what extent, the defendant's conduct caused the serious emotion[al] distress. *Molien [v. Kaiser Foundation Hospitals* (1980), 27 Cal. 3d 916, 167 Cal. Rptr. 831, 616 P.2d 813]."
*Paugh, supra,* at 80, 759 N.E.2d at 767. (citation added) *Paugh* has been interpreted by other courts to dispense with the requirement of expert medical testimony in intentional-infliction-of-emotional-distress cases involving, for example, verbal abuse by the plaintiff's employer, *Foster v. McDevitt* (1986), 31 Ohio App. 3d 237, 511 N.E.2d 403, and negligent infliction cases involving squalid conditions in rental property, including rat and roach infection, caused by a landlord's failure to maintain the premises. *Allen v. Lee* (1987), 43 Ohio App. 3d 31, 538 N.E.2d 1073.

Although *Paugh,* its predecessor, *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St. 3d 131, 447 N.E.2d 109, and the majority of cases decided in their wake involved bystanders to an emotionally distressing mishap, the fact that Grote in this case was directly involved, and not a bystander, does not serve to distinguish this case from the line of cases descending from *Schultz.* Although the criteria set forth in *Paugh* to determine whether the negligently inflicted emotional injury was reasonably foreseeable are clearly oriented to a bystander situation, the reasoning permitting recovery for negligent infliction of emotional distress adopted in *Paugh* was originally applied by the California Supreme Court to instances of direct injury to the plaintiff in *Molien, supra,* which was cited approvingly in *Paugh* in the passage quoted above. See, also, *Allen, supra.*

We hold, instead, that *Paugh's* elimination of the requirement of expert testimony in negligent-infliction-of-emotional-distress cases is distinguishable from this case on the grounds that Grote's claim here involved proof of mental distress, and its cause, of a medically significant nature that exceeded the capability of a jury of nonprofessionals to reasonably understand and evaluate.

In its observation in *Paugh* with respect to questions of proof, the Supreme Court of Ohio referred to a Comment, Negligently Inflicted Mental Distress The Case for an Independent Tort (1971), 59 Georgetown L.J. 1237, that distinguished between the classes of emotional injury primary reactions, which consist of immediate, automatic responses to a stimulus that are subjective and of a relatively short duration, and secondary reactions, which consist of traumatic neuroses that follow the primary reaction and are more enduring and amenable to observation. *Paugh, supra* at 80, n. 6, 451 N.E.2d at 767, n. 6. See Comment, *supra,* at 1259-60. In permitting lay witnesses to testify to changes in a plaintiff's emotional or habitual makeup, the Supreme Court of Ohio apparently sought to provide a plaintiff the opportunity to recover for the transient effects of primary reactions, in addition to secondary reactions that had been witnessed and treated by a professional. Although the court may have contemplated recovery for such reactions following discrete, significant and usually sudden mishaps such as plate glass colliding with the plaintiff's windshield, as in *Schultz, supra,* or repeated accidental intrusions into a child's play area by cars driven by several defendants, as in *Paugh, supra,* the causal connection becomes increasingly complex or less discernible to the untrained eye of a lay juror or witness in cases, such as this, where the assertedly negligent act or omission consists of a more subtle and less discrete stimulus. Compare *Village v. General Motors Corp.* (1984), 15 Ohio St. 3d 129, 472 N.E.2d 1079 (injury which develops gradually over time is compensable under workers' compensation statute, overruling sudden mishap requirement of *Bowman v. National Graphics Corp.* [1978], 55 Ohio St. 2d 222, 378 N.E.2d 1056), with *Ryan v. Connor* (1986), 28 Ohio St. 3d 406, 503 N.E.2d 1379 (worker injured by emotional strain must establish a substantial causal relationship by preponderance of evidence, medical or otherwise).

Additional authority for distinguishing this case from *Paugh* lies in *Rodrigues v. State* (1970), 52 Haw. 156, 472 p.2d 509, cited approvingly in *Paugh,* in which it was stated, *[i]n cases other than where proof of mental distress is of a medically significant nature, * * * the general standard of proof required to support a claim of mental distress is some guarantee of genuineness in the circumstances of the case. Id.* at ___, 472 P.2d at 520. The circumstances of this case required expert medical testimony because the proof of Grote's claim that Mayer somehow mistreated him, in either a professional or inter-

personal sense, is inextricably related to the rendition of professional psychological services, an area of knowledge in which most jurors are neither trained nor capable of making a reasonable or reliable judgment.

Grote's contention that he could qualify himself as an expert is without merit. A witness qualified by knowledge, skill, experience, training or education may testify as an expert. Evid. R. 702. The determination of whether an individual qualifies as an expert is to be made by the court in its discretion pursuant to Evid. R. 104(A). The determination will not be reversed on appeal absent a clear abuse of discretion. See *Ohio Turnpike Comm'n v. Ellis* (1955), 164 Ohio St. 377, 131 N.E.2d 397, overruled on other grounds, *Masheter v. Hoffman* (1973), 34 Ohio St. 2d 213, 298 N.E.2d 142. We find no such abuse of discretion here.

Grote's failure to file an opposing affidavit of an expert, or some other expert evidence, to place in issue the facts stated in Dr. Fisher's deposition testimony that Mayer did not cause his emotional distress and did not fail to conform to the standards of the community of psychologists in which he practiced, authorized the grant of summary judgment. See *Hoffman v. Davidson* (1987), 31 Ohio St. 3d 60, 508 N.E.2d 958; *Brielmayer v. Physicians Anesthesia Services, Inc.* (May 31, 1989), Hamilton App. No. C-880311, unreported. His first assignment of error is, accordingly, overruled.

Grote's second assignment of error, that the trial court erred when it denied his motion for summary judgment, is not well taken. An order denying a motion for summary judgment, by itself, is not a final, appealable order. *State, ex re.Overmeyer, v. Walinski* (1966), 8 Ohio St. 2d 23, 222 N.E.2d 312. Mayer's reliance upon *Walinski* to counter Grote's second assignment of error is not well placed in this instance, however, where the case has proceeded to a final disposition on other grounds, *i.e.,* the trial court's grant of summary judgment in Mayer's favor, which breathed finality into the case and made the order addressed by the second assignment of error reviewable. See *Berkley Realty, Inc. v. Settles* (Nov. 28, 1984), Hamilton App. No. C-830907, unreported. We, therefore, must proceed to address the merits of this assignment of error. Because Grote merely reiterates the arguments we have rejected under his first assignment of error, however, we must also overrule the second. The judgment of the trial court is, accordingly, affirmed.

*Judgment affirmed.*

UTZ, P.J., SHANNON and DOAN, JJ.

[1] Grote added Behavioral Science Center, Inc. (BSC) as a defendant in the caption of his notice of appeal, apparently to reflect the fact that Mayer's practice was acquired by BSC sometime around December 1, 1986, during the pendency of this litigation. Although Grote filed below a motion to join BSC as a party pursuant to Civ. R. 25(C), which was opposed by the defendants, the trial court did not enter any ruling on the motion or order any substitution or joinder of BSC as a party. In spite of the addition of BSC to the caption of his notice of appeal, Grote apparently now accedes to the absence of BSC from this litigation, stating in his brief that [t]here is an agreement of December 23, 1987, which precludes the need for plaintiff's motion to join transferee [BSC] to be ruled on at this time. Appellant's Brief at 2. BSC has therefore been omitted from the caption of this decision.

[2] Grote's complaint states, in pertinent part:

"2. That in March, 1975 plaintiff undertook the services of defendant for a reasonable compensation for vocation counseling. As part of the counseling, plaintiff was tested extensively in defendant's office and two of plaintiff's test results were 99th percentile intelligence and 8th percentile social skills.

"3. That following the testing, defendant proceeded to threat plaintiff for a clinical condition related to the discrepancy in his test results, and that such was done without plaintiff's awareness, understanding, or consent.

"4. That as part of said treatment, defendant failed, neglected, and omitted to properly advise and instruct plaintiff concerning the correct means for dealing with his condition and failed to refer plaintiff to a psychiatrist or clinical psychologist for competent treatment.

"5. That as a result of such treatment and negligence on the part of defendant, plaintiff's condition deteriorated over a period of years and plaintiff made contacts, as needed, to defendant concerning the discrepancy in his test results and vocational problems, and defendant continued to provide same incompetent treatment.

"* * *

"10. That as a result of such treatment, negligence, and advice by defendant, plaintiff incurred years of incomprehensible emotional distress, medical expenses, lost earnings, impairment of future earning capacity, and still suffers from emotional impairment."