I concur with the majority in the disposition of Assignments of Error I and III. However, I must respectfully disagree with my colleagues' disposition of Assignment of Error II. In affirming an award of $19,000 for loss of enjoyment, annoyance and discomfort, the majority is creating a right to damages that has never been allowed under Ohio law, either in contract or tort in these kind of cases.
In the first place, the majority fails to recognize the legal distinction between (1) the builder-vendor's implied promise to build a future house in a workmanlike manner, which has been uniformly recognized as ex contractu and (2) the sale by the builder-vendor of a completed home with unworkmanlike defects, which is acknowledged to be an obligation arising in tort, or exdelicto.
I find that plaintiffs' claim for defendant's breach of implied warranty of workmanlike construction arose ex contractu. It was submitted to the jury as a contract claim, and therefore, tort damages are not recoverable. Contrary to the majority's mistaken conclusion (Maj. Opn. at 11) the jury was not instructed at all as to tort damages. Indeed, the trial court instructed that the "builder's implied warranty to perform the construction of the house in a workmanlike manner * * * is part of the contract implying that the construction will be performed in a workmanlike manner. You must decide * * * whether there was a breach by the defendant of the contract with the plaintiff to build the Kishmarton's home in a workmanlike manner." (Tr. 288). Therefore, I find the trial court properly instructed the jury that the implied warranty of good workmanship arose from the contract but erred in instructing the jury, over defendant's objections, that they might award damages for breach of contract due to loss of enjoyment of their residence and annoyance and discomfort resulting from improper workmanship.[1] (Tr. at 290, 292).
Whether the breach of an implied warranty for workmanlike construction arises out of tort or contract has long presented a problem of characterization. See Kirk v. Jim Walter Homes, Inc.
(1987), 41 Ohio App.3d 128, 129, cited by the majority (p. 10) which clearly recognized the distinction to be applied here.
In Velotta v. Petronzio Landscaping, Inc. (1982), 69 Ohio St.2d 376, the Ohio Supreme Court held in the syllabus:
 1. An action by a vendee against the builder-vendor of a completed residence for damages proximately caused by failure to construct in a workmanlike manner using ordinary care — a duty imposed by law — is an action in tort to which the four-year statute of limitations set forth in R.C. 2305.09(D) applies. (Emphasis in original).
The Supreme Court's emphasis on a "completed residence" is further significant because of the footnote by the Court in its opinion, stating:
 We express no opinion as to whether a different result would be reached were the contract herein one to build a residence in the future or one to complete a partially constructed residence. See, e.g., Lloyd v. William Fannin Bldrs. (1973), 40 Ohio App.2d 507, where the parties entered into a contract for the sale of a residence to be constructed by the builder-vendor, and the court held the obligation to construct in a workmanlike manner arises ex contractu.
Velotta at fn. 2.
We have precisely the footnoted set of circumstances before us. That is, the plaintiff and the defendant entered into a contract for the defendant's services to build a new home in the future. As the majority notes (Maj. Opn. at 2), the contract between the parties explicitly stated: "The Contractor agrees that the work under this contract shall be done in a workmanlike manner * * *."
The Supreme Court has yet to address whether a different result is reached where the contract at issue is one to build a residence in the future, as in the instant case. However, our Court and our sister appellate courts that have addressed this issue, have found that a duty to build a future home in a workmanlike manner arises ex contractu from the implied bargain to build a proper home.
In Vanderschrier v. Aaron (1957), 103 Ohio App. 340, this Court first acknowledged the difference between the sale of a completed house and one still under construction and followed English common law in holding "that upon the sale of a house in the course of erection, there is an implied warranty that the house will be finished in a workmanlike manner." Id. at 341-42. A steady line of decisions have followed Vanderschrier in holding that the implied warranty of good workmanship arises ex contractu
from the agreement to build a new home. See Lloyd v. WilliamFannin Bldrs. (1973), 40 Ohio App.2d 507, 510; Tibbs v. NationalHomes Construction Corp. (1977), 52 Ohio App.2d 281. 292; Bartonv. Ellis (1986), 34 Ohio App.3d 251, 252-53; 80 O.Jur.3d "Real Property Sales and Exchanges" § 101, p. 137.
As stated by the court in Vistein v. Keeney (1990), 71 Ohio App.3d 92,105, citing in part Barton v. Ellis (1986), 34 Ohio App.3d 251
:
 "Application of this standard has resulted in a distinction between the sale of a completed residence on one hand, and the contracting for future construction services on the other (e.g.,
the sale of partially completed residences with some work to be completed, remodeling, or modification of existing structures). Absent express or implied warranties as to the quality or fitness of work performed, the liability of the builder-vendor of a completed structure for failure to exercise reasonable care to perform in a workmanlike manner sounds in tort, and arises ex delicto. The essential allegation is that the builder-vendor's negligence proximately causes the vendee's damages. Velotta, supra; Mitchem, supra. By contrast, in the provision for future services, liability arises ex contractu as an implied bargain. Vanderschrier, supra, provision, condition or term of sale, Mitchem at 73."
 As the Barton court indicates in the first sentence of the quotation, the foregoing distinction is based upon the nature of the consideration which is given in return for the purchase price. If the work has been completed before the deal is made, then the consideration is the structure itself. Under this scenario, the structure is similar to any product which is made by a manufacturer and then distributed to the public. In McMillan, supra, the court relied in part on the products-liability analogy in deciding that privity of contract was not necessary when the contract is a builder-vendor.
 When the work is to be done in the future, though, the consideration is the services which will be performed by the contractor. Due to the nature of the contract, the characteristics of the product will not be governed by the manufacturer's specifications, but the requirements of the purchaser. While the contractor is still required to perform the services in a workmanlike manner, the quality of the product will be governed by the language of the contract itself. Any determination of whether the services were performed in a workmanlike manner must be made in the reference to the actual bargain for the parties.
See, also, Sims v. Cleveland Builders (Mar. 23, 1989), Cuyahoga App. No. 55153, unreported at 2 ("In the instant case, the promise to perform in a workmanlike manner was expressly stated in the contract and such a duty is implied or imposed by law in every contract for construction services."); The Glen Homeowners'Assoc., Inc. v. Town Properties, Ltd. (Dec. 6, 1995), Hamilton App. No. C-940369, unreported at 9 ("where a builder-vendor contracts to build a new residence or to provide other construction services, liability may arise ex contractu from the specific agreements of the parties to the contract").
In the case herein, the plaintiffs' claim arises out of the contract for the future construction of the home. Therefore, the duty to construct in a workmanlike manner arose from the contractual bargain.
Finding that the claim arises ex contractu, the damages, by definition, are limited to contract damages, which do not include loss of enjoyment, annoyance or discomfort in this case. See Restatement of the Law 2d Contracts, § 353 which sets forth the limited circumstances in which non-economic damages may be awarded in a breach of contract action:
 Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.
As Comment (A) to this section explains: "Damages for emotional disturbances are not ordinarily allowed. Even if they are foreseeable, they are often particularly difficult to establish and to measure."
In the case herein, no bodily harm occurred and the breach of the contract before us was not the type that one would anticipate serious emotional disturbance as the first illustration to § 353 of the Restatement 2d demonstrates:
 A contracts to construct a house for B. A knows when the contract is made that B is in delicate health and that proper completion of the work is of great importance to him. Because of delays and departures from specifications, B suffers nervousness and emotional distress. In an action by B against A for breach of contract, the element of emotional disturbance will not be included as loss for which damages may be awarded.
This Court adopted Restatement 2d § 353 in disallowing damages for breach of contract in the sale of a tavern/restaurant in Brown Deer Restaurant, Inc. v. New Market Corp. (Mar. 28, 1985), Cuyahoga App. No. 48910, unreported, where we stated as follows at 12-13:
 Damages for breach of contract can conceivably include compenstion [sic] for emotional distress and resulting illness, as one form of expectation damages discussed earlier. Money damages would put the aggrieved party in the position he would have achieved if the contract had been performed so no distress would have resulted. Alternatively, compensation of such distress and illness might be viewed as reliance damages which put him where he would have remained without the contract.
 Using either analysis, such consequential damages are recoverable only if they are the natural and probable consequence of the breach. They are compensable if and only if they were within the parties' reasonable expectations. Restatement of the Law 2d, Contracts (1981), Section 351; Hadley v. Baxendale (1854), 9 Exch. 341; Cincinnati v. Evans (1855), 5 Ohio St. 594, Queen Incubator Co. v. Merrel Co. (1926), 21 Ohio App. 482.
 We accept and apply the restatement rule for damages relating to emotional distress from a breach of contract. See Restatement of the Law 2d (1981), Contracts, Section 353;
 "Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result."
 Contracts involving funeral services, the communication of critical messages, and other emotionally charged activities may justify damages for an emotional response to a breach. Id., at comment. An emotional response may be within the parties' reasonable expectations from a material breach of such contracts.
 A contract to sell a restaurant and tavern anticipates no greater likelihood that a breach will induce emotional damage than most contracts. That damage is not "a particularly likely result." Therefore, it is not compensable here.
Those principles were reaffirmed in Allen v. Lee (1987),43 Ohio App.3d 31, where we disallowed damages for emotional distress for breach of a residential lease, stating at 34:
 The tenant also claimed compensatory damage for emotional distress she suffered from living in the leased property. She cannot recover damages for emotional distress from a breach of contract, unless the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result. Brown Deer Restaurant, Inc. v. New Market Corp. (Mar. 28, 1985), Cuyahoga App. No. 48910, unreported; Restatement of the Law 2d, Contracts (1981), 149, Section 353. A residential lease lacks that special emotional significance. Id.
As defendant-appellant has pointed out at length, there appears to be no case in Ohio, reported or unreported, in which a builder-vendor has been found liable for damages in the form of loss of enjoyment, annoyance and discomfort by a new home purchaser.
I believe the appropriate measure of damages for breach of the builder-vendor's implied warranty of good workmanship while building a new home is as set forth by this Court in GlenwoodHomes v. State Auto Mut. Ins. (Oct. 1, 1998), Cuyahoga App. No. 72852, unreported at 8:
 The proper measure of damages for breach of a construction contract is the reasonable cost of placing the building in the condition contemplated by the parties at the time the contract was entered into. Wagenheim v. Alexander Grant Co. (1983), 19 Ohio App.3d 7, 482 N.E.2d 955; Jones v. Honchell (1984), 14 Ohio App.3d 120, 123, 470 N.E.2d 219; Sites v. Moore
(1992), 79 Ohio App.3d 694, 702, 607 N.E.2d 1114; Barton v. Ellis
(1986), 34 Ohio App.3d 251, 253, 518 N.E.2d 18; and Platner v. Herwald (1984), 20 Ohio App.3d 341, 342, 486 N.E.2d 202. However, if reconstruction and completion will involve unreasonable economic waste, damages are measured by the difference between the market value that the structure contracted for would have had and that of the imperfect structure received by the plaintiff. 5 Corbin on Contracts (1964), Section 1090.
The cases on which the majority relies are inapposite.Horrisburger v. Mohlmaster (1995), 102 Ohio App.3d 494, related to a claim for unreasonable interference with surface water flow and Reeser v. Weaver Bros., Inc. (1992), 78 Ohio App.3d 681 dealt with damages for a nuisance which polluted a lake and killed all the fish on which plaintiff depended for a livelihood. Neither case is relevant to a builder-vendor's contractual liability for damages for faulty construction.
Even assuming arguendo, that plaintiffs' claim was based on negligence, the damage award herein for emotional distress (loss of enjoyment, annoyance and discomfort) conflicts with the leading Supreme Court cases. "Ohio courts have limited recovery for claims alleging negligent infliction of emotional distress to situations such as where the plaintiff was a bystander to an accident or was in fear of physical consequences to his own person." Lawyers Cooperative v. Muething (1992), 65 Ohio St.3d 273,280. For that reason, "Ohio does not recognize a claim for negligent infliction of serious emotional distress where the distress is caused by the plaintiff's fear of a non-existent physical peril." Heiner v. Moretuzzo (1995), 73 Ohio St.3d 80, syllabus (summary judgment for doctor, hospital and Red Cross on plaintiff's claim of negligent infliction of emotional distress for falsely diagnosing her as HIV positive). See, also, Stechlerv. Homyk (1998), 127 Ohio App.3d 396, where this Court held that "Ohio simply does not permit recovery for negligent infliction of emotional distress caused by witnessing the destruction of one's property." In Stechler, summary judgment was affirmed for defendant on plaintiff Stechler's claim that the flooding of his apartment upset him and caused him to suffer a nervous breakdown. By its decision today, the majority endorses what can only be characterized as emotional distress damages (loss of enjoyment, annoyance and discomfort) because snow seeped into the plaintiff's attic. In any event, such inconvenience is a far cry from the severe and debilitating mental distress necessary before a claim may be sustained for negligent infliction of emotional distress. Paugh v. Hanks (1983), 6 Ohio St.3d 72, paragraph 3 and 3(a) of syllabus.
It is entirely inconsistent with these principles to allow emotional distress damages for loss of enjoyment, annoyance and discomfort, even if a negligence theory of liability is presumed, contrary to the court's charge to the jury.
I would agree that in cases where the plaintiff alleges a loss of use he can recover if he can show he was deprived of the use of his home during the period of disrepair. However, the jury herein awarded no damages for loss of use.
I would sustain Assignment of Error II and affirm the award without the $19,000 in emotional distress damages for loss of enjoyment, annoyance and discomfort. There is no support in Ohio contract or negligence law for such an award. The trial court erred in instructing the jury that it might make such an award.
[1] The majority is mistaken when it states that the jury was instructed that the failure to construct the home in a workmanlike manner derived from "a tort action." (Maj. Opn. at 11). That conclusion has no support in the record. The court's entire charge was based only on contract principles. (Tr. at 285-93). E.g., "If you find that the defendant breached the contract * * * then the plaintiff may recover the following damages: * * * number three, damages for their loss of enjoyment, discomfort or annoyance." (Tr. at 290). Further, the special interrogatories on those damages were based on the interrogatory: "did the defendant breach the contract." (Tr. at 291-92).