POWELL et al., Appellants,

v.

GRANT MEDICAL CENTER, Appellee.

[Cite as *Powell v. Grant Med. Ctr.*, 148 Ohio App.3d 1, 2002-Ohio-443.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 01AP–754.

Decided Feb. 5, 2002.

Linehan & Associates, L.P.A., and Margaret A. Smith; Burk, Schultz & Harman and Lawrence M. Schultz, for appellants.

Lane, Alton & Horst, Gregory D. Rankin and Jennifer A. Otis, for appellee.

PEGGY BRYANT, Judge.

{¶ 1} Plaintiffs-appellants appeal from a judgment of the Franklin County Court of Common Pleas granting the Civ.R. 56 summary judgment motion of defendant-appellee, Grant Medical Center.

{¶ 2} Plaintiffs are seven children of Charlotte Campbell, who passed away on July 17, 1999, while hospitalized at Grant Medical Center. The decedent was placed in a body bag, and a medical center security officer transported the decedent from the critical-care unit of the hospital to the morgue located in the basement of the hospital. While the security officer was transferring the decedent from the transport cart onto a lift mechanism to raise the body to the height level with the cooler drawer, the cooler tray unexpectedly malfunctioned, the telescoping rails of the cooler tray collapsed, and the decedent fell head first approximately four feet to the floor. The security officer immediately advised his

supervisor and the hospital chaplain who was on duty. The chaplain on duty unzipped the body bag, and observed blood but not bruises or cuts. Shortly after the incident, a representative of Cardaras Funeral Home arrived to take the decedent to the funeral home.

{¶ 3} The following day, plaintiffs went to the funeral home to make funeral arrangements for the decedent. The funeral director informed plaintiffs that the decedent had fallen on her face in the morgue and had injuries, including a bruised and swollen right eye, a knot on her head, cuts on her right cheek, lip and forearm, and a dislocated left ring finger. The funeral director told plaintiffs that he would attempt to repair and hide the injuries. Plaintiffs did not view the decedent until one hour before the scheduled viewing hours. According to one of the plaintiffs, the decedent's face was dark from makeup that was used to cover the bruising and discoloration, and a laceration of the decedent's cheek was evident despite the funeral home's attempt to repair it.

{¶ 4} On July 23, 1999, all but one of the plaintiffs went to Grant Medical Center to speak to the chaplain who was on duty the day their mother died. Because plaintiffs did not have a scheduled meeting, that hospital chaplain was unavailable, so plaintiffs met with an assistant chaplain and representatives from the hospital's patient relations and risk management departments. The assistant chaplain and the representative from risk management informed plaintiffs that the tray in the morgue had broken, causing the decedent's body to fall. Although the hospital representatives denied plaintiffs' request to see the incident report, the risk management representative offered to send plaintiffs information explaining exactly which piece of equipment in the morgue had malfunctioned, and the representative subsequently mailed correspondence to one of the plaintiffs that provided additional information regarding the accident.

{¶ 5} On May 12, 2000, plaintiffs filed a complaint seeking to recover damages for emotional distress they allegedly suffered as a result of the injuries to the decedent's body arising from its fall to the floor and the hospital's handling of the incident. Plaintiffs asserted three theories of recovery: (1) negligent infliction of emotional distress based on negligent handling of a dead body, (2) intentional infliction of emotional distress, and (3) breach of contract.

{¶ 6} On May 15, 2001, the Franklin County Court of Common Pleas granted defendant's summary judgment motion, finding that defendant was entitled to judgment as a matter of law on each claim of plaintiffs' complaint. The trial court concluded that although the decedent was plaintiffs' mother, plaintiffs did not bring forward evidence that their feelings rose to the level of a serious or debilitating injury, and presented no evidence that defendant acted intentionally or had any knowledge that the telescoping trays were malfunctioning or would collapse and cause the decedent to fall. Thus, the court found no negligent or

intentional infliction of emotional distress. Regarding the breach-of-contract claim, the trial court found no evidence that plaintiffs paid consideration for any promise by defendant to take care of the decedent, the evidence showed defendant was performing its obligation to care for the decedent when the unfortunate accident occurred, and plaintiffs neither asserted nor presented evidence of monetary damages for an alleged breach of contract. On June 6, 2001, the trial court entered judgment in favor of defendant and dismissed plaintiffs' complaint. Plaintiffs appeal, assigning the following errors:

{¶ 7} "I. The trial court committed reversible error in granting appellee's motion for summary judgment on appellants' claims for negligent infliction of emotional distress as a result of the appellee's mishandling of appellants' mother's corpse.

{¶ 8} "II. The trial court committed reversible error in granting appellee's motion for summary judgment on appellants' claims for intentional infliction of emotional distress as a result of the appellee's mishandling of appellants' mother's corpse.

{¶ 9} "III. The trial court committed reversible error in granting appellee's motion for summary judgment on appellants' claims for breach of contract."

{¶ 10} Because plaintiffs' first two assignments of error are interrelated, we address them jointly. Together they assert that the trial court erred in granting summary judgment to defendant on plaintiffs' claims for negligent and intentional infliction of emotional distress. Plaintiffs contend that they met the requirement of genuine, serious emotional injury to sustain their claims of tortious infliction of emotional distress.

{¶ 11} Summary judgment shall not be rendered unless the moving party demonstrates that (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, with the nonmoving party being entitled to have the evidence construed most strongly in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343. Appellate review of summary judgment motions is de novo. *Motorists Mut. Ins. Co. v. Natl. Dairy Herd Improvement Assn., Inc.* (2001), 141 Ohio App.3d 269, 275, 750 N.E.2d 1169. Accordingly, we stand in the shoes of the trial court and conduct an independent review of the record.

{¶ 12} Absent an actual, contemporary physical injury, plaintiffs must establish that defendant intentionally, recklessly, or negligently caused them "serious" emotional distress for plaintiffs to sustain a claim for tortious infliction of emotional distress. *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131,

136, 4 OBR 376, 447 N.E.2d 109 (involving negligent infliction of serious emotional distress); *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, paragraphs one and two of the syllabus (concerning negligent infliction of serious emotional distress); *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 374, 6 OBR 421, 453 N.E.2d 666 (adopting for intentional infliction of serious emotional distress the standard established in *Paugh* that emotional injury be serious). The Supreme Court in *Paugh* explained the standard of "serious" emotional distress as follows:

{¶ 13} "* * * By the term 'serious,' we of course go beyond trifling mental disturbance, mere upset or hurt feelings. We believe that serious emotional distress describes emotional injury which is *both severe and debilitating*. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.

{¶ 14} "A non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, *chronic* depression, or phobia." *Paugh*, supra, at 78, 6 OBR 114, 451 N.E.2d 759. (Emphasis added; citations omitted.)

{¶ 15} A plaintiff claiming severe and debilitating emotional distress must present some "guarantee of genuineness" in support of his or her claim to prevent summary judgment in favor of the defendant. *Paugh*, supra, at 76, 6 OBR 114, 451 N.E.2d 759; *Schultz*, supra, at 134–135, 4 OBR 376, 447 N.E.2d 109; *Knief v. Minnich* (1995), 103 Ohio App.3d 103, 658 N.E.2d 1072; *Grote v. J.S. Mayer & Co.* (1990), 59 Ohio App.3d 44, 47–48, 570 N.E.2d 1146. Expert opinion frequently is helpful in proving the genuineness of a plaintiff's claim. As the Supreme Court has observed, in a case involving the tortious infliction of emotional distress, "expert medical testimony can assist the judicial process in determining whether the emotional injury is indeed, serious," *Paugh*, supra, at 80, 6 OBR 114, 451 N.E.2d 759, and "[i]n *most instances*, expert medical testimony will help establish the validity of the claim of serious emotional distress." (Emphasis added.) *Schultz*, supra, at 135, 447 N.E.2d 109.

{¶ 16} Nonetheless, expert medical testimony is not indispensable to a claim of serious emotional distress. *Uebelacker v. Cincom Sys., Inc.* (1988), 48 Ohio App.3d 268, 276, 549 N.E.2d 1210; see, also, Dobbs, 2 Law of Torts (2001), 832, Section 306 (noting medical testimony is not ordinarily required to demonstrate the severity of the distress or its cause, but severe distress must be demonstrated and must be caused in fact by the defendant's tortious conduct). More particularly, as an alternative and in lieu of expert testimony, a plaintiff may submit the testimony of lay witnesses who are acquainted with the plaintiff as to any "marked changes in the emotional or habitual makeup" of the plaintiff

following a defendant's allegedly culpable conduct. *Paugh*, supra, at 80, 6 OBR 114, 451 N.E.2d 759. A plaintiff claiming mental distress further must establish a "substantial causal relationship" between the cause alleged, as distinguished from other possible causes, and the claimed emotional injury suffered by the plaintiff. *Grote*, supra, at 47, 570 N.E.2d 1146, citing *Ryan v. Connor* (1986), 28 Ohio St.3d 406, 28 OBR 462, 503 N.E.2d 1379. A court may decide whether a plaintiff has stated a cause of action for tortious infliction of emotional distress by ruling whether the emotional injury alleged is "serious" as a matter of law. *Paugh*, supra. The "seriousness" of the emotional distress is decided on a case-by-case basis. *Paugh*, supra, at 80, 6 OBR 114, 451 N.E.2d 759.

{¶ 17} Plaintiffs did not present expert medical testimony to support their claim of serious emotional distress. Instead, in their depositions and affidavits presented to the trial court in opposition to defendant's motion for summary judgment, plaintiffs variously stated that after their mother died and they learned of the injuries to her body, they were shocked, upset, angry, guilty, and/or sad. Several stated that they felt grief. Some of the plaintiffs stated that they cried, felt empty or lost, or experienced uncertainty. Some could not eat, experienced loss of sleep, or had nightmares. One of the plaintiffs, who was being treated for depression at the time of his mother's death, stated that he maintained the same frequency of treatments but the dosage of his anti-depressant medication was increased after his mother's death.

{¶ 18} Another plaintiff, whom the plaintiffs generally agree had the closest emotional attachment to their mother, stated that she became severely depressed, saw a mental health counselor three times, and saw her family physician, who prescribed anti-depressant medication for her. The mental health counselor, a licensed professional counselor who was not presented as a medical expert, stated in a letter that plaintiff was "experiencing great difficulty coming to terms with events surrounding the death of her mother." (Letter, dated January 17, 2001.) Still another plaintiff stated that he went from being a "social drinker" who drank once a week before his mother's death to drinking at least three times a week after his mother's death. (Campbell Depo., 9–10.)

{¶ 19} The decedent's funeral director stated that the injuries to the decedent had "visible effects" on plaintiffs "by not permitting them to properly say goodbye to their mother and have closure in the grieving process." A volunteer hospice worker at defendant hospital stated that the decedent's family was not permitted to properly grieve at her funeral and put closure to her death because "they were consumed by the horrification of her injuries." (Darling affidavit, paragraph 7.) In the hospice worker's opinion, "the legal action instituted in this case can be a constructive, effective and civil means of dealing with the anger the

family feels over the disrespect shown to them during a time of grief and pain." (Id., paragraph 11.)

{¶ 20}   With the evidence construed most strongly in plaintiffs' favor, plaintiffs failed to establish that the anger, grief, upset, and other emotional distress they allegedly suffered were both severe and debilitating. *Paugh*, supra; *Schultz*, supra.   Even though expert medical testimony generally is not indispensable to support some "guarantee of genuineness" that plaintiffs suffered severe and debilitating emotional distress, here the alleged cause of plaintiffs' emotional distress was inextricably related to the decedent's death.   Expert testimony was needed to establish a substantial causal relationship between the postmortem injuries to the decedent's body, as distinguished from the death of the decedent, and the serious emotional distress purportedly suffered by plaintiffs.   See *Grote*, supra, at 47, 570 N.E.2d 1146 (concluding that expert medical testimony is required where possible causes of plaintiff's alleged emotional injury are "inextricably related"); *Frys v. Cleveland* (1995), 107 Ohio App.3d 281, 668 N.E.2d 929 (determining that trial court should have granted directed verdict against plaintiff's claims of tortious infliction of emotional distress where plaintiff testified that she was tense and upset after alleged negligent burial of her deceased mother, she experienced sleeplessness, and she saw a psychiatrist one time, but plaintiff failed to present expert medical testimony that her distress was severe and debilitating).

{¶ 21}   Moreover, even if plaintiffs could have relied on the alternate method of proof through lay witnesses who stated that the injuries to the decedent visibly upset plaintiffs and impacted their grieving process, plaintiffs' witnesses did not testify to any "marked changes" in the plaintiffs' emotional or habitual makeup. *Motley v. Flowers & Versagi Court Reporters* (Dec. 11, 1997), Cuyahoga App. No. 72069, 1997 WL 767466 (concluding that where no expert medical testimony was presented and no lay witnesses testified regarding any changes in the plaintiff's emotional or habitual makeup, an affidavit by the plaintiff that she suffered chest pains and sought psychotherapy because of the defendant's treatment of her was insufficient to withstand a motion for summary judgment).   Nor did any of plaintiffs' witnesses have the requisite relationship to testify to such changes.   Cf. *Uebelacker*, supra, at 276, 549 N.E.2d 1210 (finding sufficient evidence to withstand summary judgment where plaintiff's wife of twenty-six years presented averments regarding various changes in the plaintiff's emotional makeup that occurred for over a year following alleged acts of the defendant); *Barker v. Netcare Corp.* (2001), 147 Ohio App.3d 1, 768 N.E.2d 698 (determining lay witness competent to testify regarding emotional distress damages where plaintiff's husband testified to significant changes to the plaintiff's emotions and personality after alleged tortious conduct by defendants toward plaintiff).

{¶ 22} Plaintiffs nonetheless contend that they presented sufficient evidence to establish the element of serious emotional injury because authorities have acknowledged the likelihood of mental anguish resulting from the mishandling of dead bodies, as recognized in *Carney v. Knollwood Cemetery Assn.* (1986), 33 Ohio App.3d 31, 34, 514 N.E.2d 430, where cemetery workers deliberately and recklessly kept digging in a grave after they hit an old wooden vault, and then threw the vault and its broken remains in a heap in the back of the cemetery. In acknowledging a cause of action for the mishandling of a dead body as a sub-species of the tort of infliction of serious emotional distress, *Carney* quoted at length from Prosser, Law of Torts (4th Ed.1971) 328–330, regarding cases that allow a recovery for mental disturbances due to the mishandling of a corpse:

{¶ 23} "* * * What all of these cases appear to have in common is an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious. * * * Where the guarantee can be found, and the mental distress is undoubtedly real and serious, there is no essential reason to deny recovery." *Carney*, supra, at fn. 4.

{¶ 24} Despite plaintiffs' suggestion to the contrary, the fact that a claim of emotional distress is based upon an alleged mishandling of a corpse does not necessarily "guarantee that the claim is not spurious." Id. In *Carney*, on which plaintiffs rely, the particular circumstances were so outrageous and egregious that they could serve as a guarantee that the plaintiffs' claim of emotional distress was not spurious. Less egregious circumstances have not had similar results. Cf. *Audia v. Rossi Bros. Funeral Home* (2000), 140 Ohio App.3d 589, 748 N.E.2d 587 (finding funeral home not liable for negligent infliction of emotional distress on husband and daughter of deceased woman upon their discovery, during calling hours, that the decedent's body had been switched with another deceased woman's body); *Davis v. Billow Co. Falls Chapel* (1991), 81 Ohio App.3d 203, 610 N.E.2d 1024 (determining that funeral home not liable for emotional injuries suffered by decedent's family on the family's learning that decedent's unembalmed body would not be in the casket); *Woods v. Aurora Casket Co., Inc.* (Aug. 27, 1991), Hancock App. No. 5–90–54, 1991 WL 217714 (concluding that plaintiffs claiming serious emotional distress upon learning that water had seeped into deceased husband's casket due to negligent manufacture of casket had to show that claimed emotional injury was severe and debilitating).

{¶ 25} Plaintiffs failed to present competent evidence to establish that they suffered serious emotional injury that was specifically caused by the postmortem injuries to the decedent. They were thus unable to sustain their claims of negligent and intentional infliction of emotional distress against defendant's motion for summary judgment. Because summary judgment was properly

**10**

granted on those claims, plaintiffs' first and second assignments of error are overruled.

{¶ 26} In their third assignment of error, plaintiffs assert that the trial court erred in granting summary judgment on their claim for breach of contract. Plaintiffs contend that a contract was established because, according to an affidavit of the plaintiffs submitted to the trial court, defendant promised plaintiffs that it would look after and care for the decedent until the funeral home arrived to pick up the corpse. Without further citation to any evidence in the record to support their statements, plaintiffs contend that (1) they relied on defendant's promise that the decedent would be properly cared for, (2) defendant received monetary consideration to care for the decedent when she was alive, as well as when she was deceased, and (3) defendant failed to care for the decedent as agreed. Accordingly, plaintiffs maintain that they established a genuine issue of material fact to present their breach of contract claim to a jury.

{¶ 27} "A contract is an agreement, upon sufficient consideration, between two or more persons to do or not to do a particular thing." *Nilavar v. Osborn* (2000), 137 Ohio App.3d 469, 483, 738 N.E.2d 1271, quoting *Lawler v. Burt* (1857), 7 Ohio St. 340, 350, 1857 WL 52. To prove the existence of a contract, a plaintiff must show that the parties consented to the terms of the contract, that both parties had a "meeting of the minds," and that the terms of the contract are definite and certain. *McSweeney v. Jackson* (1996), 117 Ohio App.3d 623, 631, 691 N.E.2d 303. To prove a breach of contract claim, a plaintiff must show "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Nilavar*, supra, at 483, 738 N.E.2d 1271, quoting *Doner v. Snapp* (1994), 98 Ohio App.3d 597, 600, 649 N.E.2d 42.

{¶ 28} Other than an allegation that "[d]efendant's representative communicated with plaintiffs prior to their departure from the hospital that the proper arrangements would be made for Cardaras Funeral Home to pick up their deceased mother," plaintiffs' complaint for breach of contract did not set forth specific terms of an agreement and did not allege that defendant had received valuable consideration as part of an agreement. Moreover, although plaintiffs' complaint alleged that "[d]efendant breached its agreement with plaintiffs to provide the necessary requisite care for the deceased," and, as a result, plaintiffs suffered "emotional distress and mental anguish to their damage," plaintiffs alleged no other damages.

{¶ 29} Plaintiffs cannot recover damages for emotional distress from a breach of contract unless the contract or the breach is of such a kind that "serious emotional disturbance" was a particularly likely result. *Kishmarton v.*

*William Bailey Constr., Inc.* (2001), 93 Ohio St.3d 226, 230, 754 N.E.2d 785; *Allen v. Lee* (1987), 43 Ohio App.3d 31, 34, 538 N.E.2d 1073; *Brown Deer Restaurant v. New Market Corp.* (Mar. 28, 1985), Cuyahoga App. No. 48910, 1985 WL 9802; 3 Restatement of the Law 2d, Contracts (1981) 149, Section 353. Comment *a* to Section 353 of the Restatement explains that although "[d]amages for emotional disturbance are not ordinarily allowed," there are two exceptional situations where such damages are recoverable, including (1) when an emotional disturbance accompanies a bodily injury, and (2) when "the contract or the breach is of such a kind that *serious emotional disturbance* was a particularly likely result." (Emphasis added.) The comment states that a contract for the proper disposition of dead bodies is an example of a contract where recovery of serious emotional distress damages is allowed. Id.

{¶ 30} Even if plaintiffs have presented sufficient evidence of a contract and defendant's breach of that contract involving the type of contract claim where recovery of serious emotional distress damages may be allowed, plaintiffs are unable to sustain their breach of contract claim because, as noted, they did not establish that they suffered *serious emotional distress* as a result of defendant's handling the decedent's body. Accordingly, without the necessary element of damages having been established, summary judgment was appropriately granted on plaintiffs' breach of contract claim. Plaintiffs' third assignment of error is thus overruled.

{¶ 31} Having overruled plaintiffs' three assignments of error, we affirm the judgment of the trial court.

                                                            Judgment affirmed.

TYACK, P.J., and PETREE, J., concur.