OPINION
{¶ 1} Appellants Daniel and Safrona Gulley ("the Gulleys") appeal from judgment against them in the Court of Common Pleas, Holmes County, stemming from litigation involving a dispute between next-door neighbors. The appellees are Chris and Huai Markey ("the Markeys"), defendants-counterclaimants in the aforesaid action. The relevant facts leading to this appeal are as follows.
 {¶ 2} In the fall of 1998, the Markeys moved into a home in O'Dell Lake, Holmes County, next to the home and lot owned by the Gulleys. The two lakefront properties share a border which runs in a generally southeast to northwest fashion, terminating on the north end where the water meets the shoreline. The Markey home is situated rather close to said border line, such that some of their windows are just several feet to the east of the edge of the Gulley property. Tensions arose soon after the Markeys moved in. The Markeys disliked the level of noise, including all-terrain vehicles, and late-night activity they observed on the Gulley property, while the Gulleys accused Chris Markey of invading their privacy by videotaping some of the disputed events. Over the next two years, the Markeys summoned Holmes County sheriff deputies to the area well over fifty times. The Gulleys also accused Chris of attempting to damage a sewage line; the Markeys became further aggravated by large floodlights unexpectedly erected in the Gulleys' backyard. The Gulleys also erected an approximately fourteen-foot high unpainted plywood wall on the edge of the boundary near the Markey home. At one point, Safrona purportedly called Huai Markey, who is Asian-American, a "gook" and "Hopsing." As the tensions mounted, the Gulleys decided to cut down a bush and pull up some vines on the border area. In response, another visit was made by a sheriff deputy, who observed the Gulleys encroaching on the Markeys' property to eliminate the vines. On June 16, 2000, Daniel and Safrona were each charged with one count of criminal mischief in violation of R.C.2909.07(A). Daniel was also charged with one count of criminal trespass in violation of R.C. 2911.21(A)(1). Following a bench trial, the Holmes County Court found appellants guilty as charged. On November 20, 2000, said court sentenced Daniel to an aggregate term of ninety days in jail, and sentenced Safrona to sixty days in jail. See State v. Gulley (June 4, 2001), Holmes App. No. 00 CA 018.
 {¶ 3} On August 10, 2000, the Gulleys filed suit in common pleas court, alleging harassment, malicious prosecution, and the intentional infliction of emotional distress. They therein sought monetary damages of $16,000,000 and equitable boundary line relief. The Markeys answered and counterclaimed on August 18, 2000, alleging trespass, libel, slander, private nuisance, invasion of privacy, and the intentional infliction of emotional distress. Prior to trial, the Gulleys added claims of invasion of privacy and defamation to their complaint.
 {¶ 4} The case proceeded to jury trial for four days in September 2001. At the close of the Markeys' case, the Gulleys moved for a directed verdict as to the Markey counterclaims. The trial court sustained the motion as to the counterclaims for libel and slander, but denied a directed verdict regarding the other claims. The case was referred to the jury following closing arguments. The jury returned a verdict in favor of the Markeys for $101,000, representing $50,000 for compensatory damages on their claim for intentional infliction of emotional distress, and $50,000 for compensatory damages on their claim of nuisance. In addition, the jury awarded $250 in compensatory damages and $750 for punitive damages on the Markey's trespass claim.
 {¶ 5} The Gulleys filed written motions for judgment notwithstanding the verdict and for a new trial, both of which were denied on November 8, 2001. On December 7, 2001, the Gulleys filed a notice of appeal. They herein raise the following five Assignments of Error:
 {¶ 6} "I. The trial court erred when it denied plaintiffs' motion for directed verdict of all claims of the defendant.
 {¶ 7} "II. The trial court erred when it refused to grant plaintiffs' motion for judgment not withstanding the verdict.
 {¶ 8} "III. The trial court erred when it refused to grant plaintiffs' motion for a new trial.
 {¶ 9} "IV. The trial court erred when it permitted the introduction of unfairly prejudicial and irrelevant evidence.
 {¶ 10} "V. The verdict of the jury was against the manifest weight of the evidence."
 {¶ 11} We will address appellants' Fifth Assignment of Error first.
 V. {¶ 12} In their Fifth Assignment of Error, appellants contend the jury's verdict for damages on the counterclaim was against the manifest weight of the evidence. We disagree.
 {¶ 13} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries
(Feb. 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 14} According to the record, the animosity between neighbors commenced in the spring of 2000, when Safrona became upset about a compost bin Chris Markey placed in his backyard. At trial, the Markeys introduced a letter written by Safrona in which she labeled Chris a "slob" and "paranoid." In June of 2000, the Gulleys commenced their unsolicited campaign of removing vines from the Markey home, leading to criminal charges as recited above. According to Chris' testimony, these destructive acts occurred no less than four times. The Gulleys then set up large spotlights in their backyard after the criminal proceedings, which flooded through the Markey home to the extent that their bedroom could not be fully darkened at night, although the Gulleys claimed the lights were legitimate. The Gulleys also conducted numerous parties, in part pertaining to their daughter Kelly's high school graduation, complete with a bonfire approximately fifty feet from the Markey home. Chris described these parties as loud and boisterous, in some instances lasting until 4:00 AM. When the Gulleys put up the aforecited "fence" in the summer of 2000, it was constructed so that it approximated the length of the Markey home. As the photographs reveal, it was in reality an ungainly, two-story partition of bare plywood planted just a few feet from the Markey house. The Gulleys added to this device more spotlights on top of the "fence," and on more than one occasion made banging noises on it at night. Chris also testified to being followed by Safrona and Kelly while driving. He also recited instances of the Gulleys firing guns on the property, while "glaring" at the Markeys, although the Gulleys testified that the weapons used were for hunting purposes or killing snakes.
 {¶ 15} Appellants first argue that the finding of intentional infliction of emotional distress was not supported by the evidence, primarily challenging the existence of emotional distress per se. To state a claim for intentional infliction of emotional distress, the Markeys must be able to establish that: (1) appellants either intended to cause emotional distress, or knew or should have known that their actions would result in serious emotional distress; (2) appellants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency, and would be considered utterly intolerable in a civilized community; (3) appellants' actions proximately caused injury to the Markeys; and (4) the mental anguish the Markeys suffered is serious and of such a nature that no reasonable person could be expected to endure. Ashcroft v. Mt. SinaiMedical Center (1990), 68 Ohio App.3d 359, 588 N.E.2d 280.
 {¶ 16} In the case sub judice, Dr. Coblentz testified that Chris suffered from dysthymia and post-traumatic stress disorder (PTSD). He described dysthymia as a form of depression, not as elevated as major depression but likely to be present in a patient for a longer period of time. Tr. at 500. Dr. Coblentz opined that Chris' PTSD manifested itself in a form of "hyper-vigilance," such as noticing noises that would normally be glossed over. Tr. at 501. Although Chris did not display the more commonly recognized PTSD symptoms of nightmares and flashbacks, Dr. Coblentz maintained that he displayed symptoms sufficient to support a PTSD diagnosis, and that the neighborhood dispute formed "* * * the source of much of his stress and therefore, of course, the symptoms that we see." Tr. at 502. He also noted Chris' corresponding digestive and gastrointestinal problems. Tr. at 503. Huai described her husband as "very distressed" and "not himself." Tr. at 451. Although she was not herself the subject of expert testimony, she testified that she lived in fear (Tr. at 451), and stated "I feel I have no control over what happened to us." Tr. at 452. Upon review, we find that competent, credible evidence supported a finding of serious emotional distress caused to the Markeys by the Gulleys. Moreover, "[e]xpert medical testimony is not indispensable to a claim of serious emotional distress. * * * More particularly, as an alternative and in lieu of expert testimony, a plaintiff may submit the testimony of lay witnesses who are acquainted with the plaintiff as to any `marked changes in the emotional or habitual makeup' of the plaintiff following a defendant's allegedly culpable conduct." Powell v. Grant Med. Ctr. (2002), 148 Ohio App.3d 1,6, 771 N.E.2d 874 (citations omitted).
 {¶ 17} Appellants also contend that the Markeys failed to set forth monetary damages for psychological and hedonic injuries. However, compensatory damages include actual losses, including past and future medical bills, pain and suffering, disabilities or disfigurement and loss of enjoyment of life. Fantozzi v. Sandusky Cement Prod. Co. (1992),64 Ohio St.3d 601, 612, 597 N.E.2d 474. Appellants provide no authority for the proposition that compensatory damages of $50,000 for the intentional infliction of emotional distress is outside the province of the jury based on the protracted behavior of appellants evident in the record sub judice.
 {¶ 18} In regard to the remaining $50,000 verdict, we note there is no precise rule for ascertaining damages in a nuisance action, and it is within the discretion of the trier of fact to determine what sum a complaining party should receive for discomfort and annoyance. Bullockv. Oles, Mahoning App. No. 99 CA 23, 2001-Ohio-3220. Thus, "[a] reviewing court should only interfere if the award is clearly excessive or influenced by passion or prejudice." Id. Upon review of the record in this matter, we our disinclined to substitute our judgment regarding nuisance damages for that of the jurors who observed the trial firsthand.
 {¶ 19} Appellants' Fifth Assignment of Error is overruled.
 I. {¶ 20} In their First Assignment of Error, appellants contend the trial court erred when it denied their motion for a directed verdict as to the Markeys' counterclaims. We disagree.
 {¶ 21} The standard for granting a directed verdict is set out in Civ.R. 50(A)(4): "* * * (4) When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." In evaluating whether a directed verdict is merited, a court decides if "`there exists any evidence of substantial probative value in support of [the claims of the party against whom the motion is directed].'" Schafer v. RMS Realty (2000), 138 Ohio App.3d 244, 257,741 N.E.2d 155, citing Wagner v. Roche Laboratories (1996),77 Ohio St.3d 116, 119-120, 671 N.E.2d 252, 255-256.
 {¶ 22} Based on our review of the evidence as recited in our holding as to appellant's Fifth Assignment of Error, we find reasonable minds could come to differing conclusions as to the Markey's counterclaims, and we therefore find no error in the trial court's denial of the Gulley's requested directed verdict. See, also, Servenack v.Sturgeon Mahoning App. No. 99 CA 53, 2001-Ohio-3406, (noting that if credible, competent evidence supports the jury's finding, then, when reviewing the evidence in a directed verdict analysis in the light most favorable to the non-moving party, a reviewing court can conclude the jury could have found likewise.) Appellants' First Assignment of Error is overruled.
 II. {¶ 23} In their Second Assignment of Error, appellants contend the trial court erred in denying their motion for judgment notwithstanding the verdict. We disagree.
 {¶ 24} The same tests are applied in reviewing decisions on motions for judgment notwithstanding the verdict as in directed verdict analyses. Posin v. A.B.C. Motor Court Hotel, Inc. (1976),45 Ohio St.2d 271, 275, 344 N.E.2d 334, 339. Based on our holding as to appellants' First Assignment of Error, we overrule appellants' Second Assignment of Error.
 III. {¶ 25} In their Third Assignment of Error, appellants contend the trial court erred in denying their motion for a new trial. We disagree.
 {¶ 26} The decision to grant or deny a motion for new trial rests in the sound discretion of the trial court, and will not be reversed on appeal absent an abuse of discretion. Sharp v. Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307, 312, 649 N.E.2d 1219. Appellants essentially argue that the jury's verdict was based on passion and prejudice, thus warranting a new trial. Specifically, appellants maintain that the two $50,000 jury awards on the Markeys' counterclaims were, in light of appellants' mention during closing of $50,000 as compensation on their own claims, simply "retaliatory verdicts."
 {¶ 27} Nonetheless, upon review of the record, we are unpersuaded that the denial of a new trial constituted an abuse of discretion under the facts and circumstances of this case. Appellants' Third Assignment of Error is overruled.
 IV. {¶ 28} In their Fourth Assignment of Error, appellants contend the trial court erred in allowing testimony concerning Daniel Gulley's observed indicia of intoxication during the time period in question. We disagree.
 {¶ 29} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,180, 510 N.E.2d 343. As a general rule, all relevant evidence is admissible. Evid.R. 402. Our task is to look at the totality of the circumstances of a particular case, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing the disputed evidence. See State v. Oman (Feb. 14, 2000), Stark App. No. 1999CA00027, unreported. Evid.R. 403(A) reads: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." As an appellate court, we will not interfere with a trial court's balancing of probativeness and prejudice "* * * unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby." State v. Slagle (1992),65 Ohio St.3d 597, 602, 605 N.E.2d 916.
 {¶ 30} In addition to the nuisance allegations at issue, we note this action commenced with allegations by the Gulleys that they were being harassed by the frequent police calls made by the Markeys. As such, evidence of Daniel's intoxication was relevant, at minimum, on the issue of the reasonableness of the Markeys' decisions to utilize law enforcement rather than discuss the problems as neighbors generally might be expected to do. Upon review, in light of the numerous witnesses' overall trial testimony, we are unpersuaded that the trial court's allowance of evidence of intoxication rose to the level of an abuse of discretion and resulted in material prejudice warranting reversal.
 {¶ 31} Appellants' Fourth Assignment of Error is overruled.
 {¶ 32} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Holmes County, Ohio, is hereby affirmed.
By: Wise, J., Gwin, P.J., and Hoffman, J., concur.
topic: Intentional Infliction of Emotional Distress.