[Cite as *Jeffers v. Dept. of Natural Resources*, 2009-Ohio-7026.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

STACIE A. JEFFERS

    Plaintiff

    v.

DEPARTMENT OF NATURAL RESOURCES

    Defendant
    Case No. 2006-04199

Judge Joseph T. Clark

DECISION

{¶ 1} Plaintiff brought this action alleging claims of breach of contract, defamation,[1] and intentional infliction of emotional distress. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} This case arises as result of a settlement agreement entered into by and between plaintiff and defendant and her former employer, the Ohio Department of Natural Resources (ODNR). In May 2000, plaintiff was hired as a patrol officer in ODNR's Division of Watercraft. The terms of her employment required that she serve a one-year probationary period. According to plaintiff, at some point after she started work at ODNR, one of her female supervisors began to sexually harass her. Plaintiff alleged that because she did not reciprocate the advances her supervisor responded by treating her unfairly, criticizing her work, and giving her poor performance reviews. On October 19, 2000, plaintiff was informed by letter that ODNR was removing her from employment. (Plaintiff's Exhibits 2 and 3.) Included with that correspondence was a

---

[1]Subsequent to trial, plaintiff voluntarily dismissed her defamation claim; therefore, it is not addressed in this decision.

"personnel action" form which noted that plaintiff's separation from ODNR was designated a "probationary removal."

{¶ 3} After her removal, plaintiff retained legal counsel. In May 2001, the parties, through their respective attorneys, agreed to compromise their dispute via the settlement and release agreement that is the subject of this action. Among other things, plaintiff agreed not to pursue her claims of wrongful termination, violation of public policy, violation of certain terms of her Fraternal Order of Police contract, and her claims of sexual harassment and assault and battery. In exchange, ODNR agreed to reprocess the October 19, 2000 personnel action to reflect that plaintiff had voluntarily resigned from her employment.

{¶ 4} In June 2001, after plaintiff and her counsel had signed the settlement papers, plaintiff's counsel forwarded the same to defendant's counsel together with a request that ODNR send back a copy of the personnel action form that it had agreed to provide. (Plaintiff's Exhibit 13.)

{¶ 5} On July 30, 2001, plaintiff's counsel followed up with a letter in which she stated that: "I am writing to request a copy of the revised personnel action that was placed in [plaintiff's] file stating that she resigned her employment with the Division of Watercraft. * * * It is my understanding that any personnel action stating that [plaintiff] was a probationary removal, or anything to that effect, was deleted from her personnel file. (Plaintiff's Exhibit 15.)

{¶ 6} On August 10, 2001, counsel for ODNR responded to plaintiff's request by providing an amended personnel action form stating that plaintiff had resigned "per the attached settlement agreement," and relating he had "advised the department's office of Human Resources of our responsibility to remove any associated discipline from [plaintiff's] personnel file." (Plaintiff's Exhibits 16 and 18.)

{¶ 7} On September 5, 2001, plaintiff's counsel replied to ODNR in a letter stating in pertinent part that: "[a]s you are aware, the purpose behind the resignation and settling this case without litigation was [to] avoid discussing this issue with future prospective employers. * * * It was my understanding that you would investigate changing the remarks on the personnel action to 'resignation' instead of 'resignation per attached settlement agreement.' This comment defeats the entire purpose of the

settlement in this matter. Since [plaintiff] is searching for another position, I do not wish to impede her in any way." (Plaintiff's Exhibit 19.)

{¶ 8} In a letter dated September 6, 2001, ODNR agreed to delete the unacceptable language and to process a new personnel action form. (Plaintiff's Exhibit 20.) On September 25, 2001, ODNR sent plaintiff's counsel a copy of a new personnel action form reflecting that plaintiff's separation was deemed "resigned-regular." On September 28, 2001, plaintiff's counsel sent a copy of the revised personnel action form to plaintiff and a letter stating that her file with counsel's office had been officially closed. (Plaintiff's Exhibit 22.)

{¶ 9} Plaintiff alleges that subsequent to the settlement agreement, she applied for state employment but learned that the information that she was a probationary removal was available to prospective employers. She maintains that she has been stigmatized by such classification; that the stigma is virtually impossible to overcome for the purposes of future state employment; and that, when such information is revealed after she has related that she resigned from ODNR, she appears to be untruthful.

{¶ 10} The crux of plaintiff's case is that, notwithstanding the agreement to remove the probationary removal documentation from her personnel file, the information was posted on the Ohio Department of Administrative Services (ODAS) web-site then known as EHOC (Employee History on Computer). Defendant contends that the settlement did not include ODAS; that it had no authority to direct ODAS to delete the probationary removal designation; that the settlement agreement referenced only plaintiff's personnel file; and that such file did not include an EHOC printout. Defendant also argues that plaintiff failed to prove that the ODAS designation resulted in any injury to her employment efforts subsequent to her departure from ODNR.

{¶ 11} "The interpretation of a written contract is a question of law, absent patent ambiguity." *P & O Containers, Ltd. v. Jamelco, Inc.* (1994), 94 Ohio App.3d 726, 731. As a general rule, the goal of the court in construing a written contract is to arrive at the intent of the parties, which is presumed to be stated in the document itself. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 1997-Ohio-202; *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 1996-Ohio-393. Where the terms of a contract are clear and unambiguous, the court cannot find different intent from that expressed in the contract. *E.S. Preston Assoc., Inc. v. Preston* (1986), 24 Ohio St.3d 7.

{¶ 12} It is undisputed that the only contract terms at issue herein are set forth at paragraph 7A of the settlement agreement, which reads as follows: "Defendant (ODNR) agrees remove any associated discipline from Plaintiff's personnel file and to process a Personnel Action which reflects a resignation rather than a termination." (Plaintiff's Exhibits 1.)

{¶ 13} Two human resources representatives from ODNR testified at trial; William McGarrity, Human Resources Director for ODNR's Division of Watercraft and Christine Smith, Human Resources Director for the Central Office of ODNR. Both Smith and McGarrity testified regarding the contents of plaintiff's personnel files which had been maintained in their respective agencies.

{¶ 14} McGarrity testified with respect to the documents that are typically kept in an employee's personnel file and identified the specific contents of plaintiff's file from the Division of Watercraft. McGarrity had personal knowledge of plaintiff's removal and testified that there were no disciplinary actions in her file and no references to her probationary removal, because he had removed them from the Division of Watercraft's file after the settlement was completed. McGarrity also testified regarding the EHOC system. He explained that when an employing agency such as ODNR prepares a personnel action it is forwarded to ODAS and that agency enters the action on the EHOC. He further related that because EHOC entries are considered public records, employing agencies have no authority to delete entries that they have submitted to EHOC. According to McGarrity, only ODAS may delete an entry and such actions generally are not taken absent a court order. McGarrity testified that ODNR had never requested that ODAS delete plaintiff's, or any other, probationary removal entry. McGarrity also testified that it is not customary that ODNR include an EHOC printout in an employee's personnel file and that there was no EHOC printout in plaintiff's file.

{¶ 15} Smith testified with regard to the contents of plaintiff's ODNR personnel file. As with the Division of Watercraft file, the central-office file did not contain an EHOC printout. However, it is undisputed that the file did contain the settlement and release agreement, the letter stating that plaintiff was removed during her probationary period, and the personnel action form noting that she was removed during her probation. Smith testified that because the file was over five years old, she had to retrieve it from ODNR's records retention storage facility in order to bring it to court.

Both Smith and McGarrity testified that they had no record of ever receiving either a public records request for plaintiff's personnel file or an inquiry for any documents from her file.

{¶ 16} Nancy Hetersheit, ODAS Human Resources Record Manager, testified regarding the contents of plaintiff's personnel file with that agency. (Plaintiff's Exhibit 6.) She related that as of the date of trial, the EHOC system continued to reflect that plaintiff had been probationarily removed as of October 19, 2000. She further testified that there had been instances when an EHOC entry had been deleted; however, she stated that such action generally required a court order or settlement agreement initiated by a state agency. Hetersheit stated that she did not personally have the authority to delete any EHOC entries. Jared Meadows, Director of Human Resources at Twin Valley Behavioral Hospital, a state agency, testified that plaintiff was considered for a position at his agency, but that he never requested or received her personnel file from ODNR. He related that plaintiff had signed a form authorizing the release of her employment history, and that he had then obtained the EHOC printout. Meadows stated that plaintiff was offered employment even after he learned that she had originally been a probationary removal. Ultimately, Twin Valley rescinded its offer because plaintiff was unable to begin work on the date it requested.

{¶ 17} Lastly, Laren Knoll, plaintiff's counsel during the settlement negotiations, testified. Knoll related that the majority of her legal practice concerns employment cases and that she has negotiated state employment cases on a number of occasions. She stated that her understanding of the settlement agreement was that the EHOC information would also be deleted from plaintiff's records. According to Knoll, plaintiff's personnel file was not complete absent the EHOC data.

{¶ 18} Upon review of the evidence, testimony, and arguments of counsel, the court makes the following determination.

{¶ 19} The parties' dispute centers upon what comprised plaintiff's "personnel file." The words in a contract shall be accorded their plain, ordinary meaning unless to do so would create an absurd result. *Alexander v. Buckeye Pipeline* (1978), 53 Ohio St.2d 241, 245. The court finds that the language in Paragraph 7A is clear and specific. Thus, the court cannot find a different intent from that expressed in the contract. *E.S. Preston Assoc., Inc.,* supra. The language refers only to plaintiff's personnel file with ODNR, which includes its subdivision, the Department of Watercraft. ODAS was not a

party to the settlement negotiations, there is no mention of ODAS in the agreement, and there is no mention of the computer data contained in the EHOC system. The court is persuaded by the evidence that the EHOC is a separate compilation of data that is not a part of employees' personnel files with their particular state agencies. Although plaintiff's counsel was diligent in obtaining a personnel action form that correctly reflected the terms of the parties agreement, neither she nor defendant's counsel addressed the question whether the EHOC system should also be altered accordingly. Thus, the court concludes that defendant did not breach its contract with plaintiff with respect to removal of the probationary removal designation from ODAS records.

{¶ 20} However, there is no dispute that ODNR central-office records contained both the information that was the subject of plaintiff's settlement agreement and her counsel's efforts to achieve a correct reflection of that agreement. The court finds that, even if the file has never been requested, ODNR breached the settlement agreement by retaining its records of plaintiff's probationary removal in her central-office personnel file. The court concludes that defendant is liable for breach of its agreement with respect to those files. Although there is no evidence that plaintiff sustained loss of any employment opportunity as a result of such breach, the court finds that such evidence was not required at the liability portion of the trial.

{¶ 21} Plaintiff has also asserted a claim of intentional infliction of emotional distress. In order to sustain such a claim, plaintiff must show that: "(1) defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious." *Hanly v. Riverside Methodist Hosp.* (1991), 78 Ohio App.3d 73, 82, citing *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 34.

{¶ 22} To constitute conduct sufficient to give rise to a claim of intentional infliction of emotional distress, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20, Teamsters* (1983), 6 Ohio St.3d 369, 375, quoting 1 Restatement of the Law 2d, Torts (1965) 73, Section 46, Comment *d.*

{¶ 23} Plaintiff contends that defendant's conduct in failing to delete the probationary removal information from her personnel files was extreme and outrageous and caused her serious emotional distress. The court finds that none of defendant's conduct can reasonably be construed as intentional or reckless, nor does it rise to the requisite level of severity or outrageousness to sustain this claim. Accordingly, plaintiff's intentional infliction of emotional distress claim must fail.

{¶ 24} To the extent that plaintiff is claiming emotional distress damages as a result of a breach of contract, the parties' arguments on such issue are premature at this juncture. However, under Ohio law, "[p]laintiffs cannot recover damages for emotional distress from a breach of contract unless the contract or the breach is of such a kind that 'serious emotional disturbance' was a particularly likely result." *Powell v. Grant Med. Ctr.*, 148 Ohio App.3d 1, 10, 2002-Ohio-443, citing *Kishmarton v William Bailey Construction, Inc.,* 93 Ohio St.3d 226, 230, 2001-Ohio-1334. (Additional citations omitted.) "[A]lthough 'damages for emotional disturbance are not ordinarily allowed,' there are two exceptional situations where such damages are recoverable, including (1) when an emotional disturbance accompanies a bodily injury, and (2) when 'the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.'" Id. at 11 quoting 3 Restatement of the Law 2d, Contracts (1981) 149, Section 353, Comment *a*.

{¶ 25} The court finds that the contract in this case does not meet any of the recognized exceptions that would allow plaintiff to recover for emotional distress.

{¶ 26} For the foregoing reasons, the court finds that defendant breached its settlement agreement with plaintiff with respect to ODNR's retention of records of plaintiff's probationary removal, but not as to the EHOC data retained by ODAS. Further, the court finds that plaintiff has failed to prove her claim of intentional infliction of emotional distress. Judgment shall be entered accordingly.

Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

STACIE A. JEFFERS

    Plaintiff

    v.

DEPARTMENT OF NATURAL RESOURCES

    Defendant
    Case No. 2006-04199

Judge Joseph T. Clark

<u>JUDGMENT ENTRY</u>


    This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of plaintiff on her breach of contract claim against the Ohio Department of Natural Resources with respect to the central-office personnel file that it maintains. The case will be set for trial on the issue of damages associated with that claim.

    Judgment is entered in favor of defendant on plaintiff's claim of intentional infliction of emotional distress, and her breach of contract claim concerning personnel records retained by the Ohio Department of Administrative Services in its Employee History On Computer system.


                                     _____
                                        JOSEPH T. CLARK
                                        Judge

cc:

Eric A. Walker
Peter E. DeMarco
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

W. Jeffrey Moore
326 South High Street, Suite 300
Columbus, Ohio 43215-4570

LH/cmd
Filed November 20, 2009
To S.C. reporter January 5, 2010