[Cite as *Stanchina v. Wright State Univ.*, 2012-Ohio-1249.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

LINDA STANCHINA

Plaintiff

v.

WRIGHT STATE UNIVERSITY

Defendant

Case No. 2010-11358

Judge Alan C. Travis

DECISION

{¶1} On October 31, 2011, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B).  On November 18, 2011, plaintiff filed a response.  On November 22, 2011, defendant filed a motion for leave to file a reply, which is GRANTED instanter.  The motion for summary judgment is now before the court for a non-oral hearing.

{¶2} Civ.R. 56(C) states, in part, as follows:

{¶3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  No evidence or stipulation may be considered except as stated in this rule.  A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party

against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."  See also *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317.

{¶4} It is undisputed that plaintiff was employed by defendant's Boonshoft School of Medicine from 1990 to 2009, most recently serving as an executive assistant to the chairman of the department of emergency medicine, Dr. Glenn Hamilton.  According to the complaint, plaintiff developed a plan in August 2008 with Dr. Hamilton whereby she would retire on May 31, 2009, and she would utilize sick leave or medical leave prior to that time as needed for her spinal arthritis and degenerative disk disease.  Plaintiff alleges that defendant improperly denied her subsequent requests for leave, however, and that she was consequently left with no choice but to retire earlier than she intended, on March 31, 2009.  Plaintiff further alleges that defendant failed to notify her about an early retirement program, known as the "Employee Severance Plan" (ESP), that was announced in June 2009, but was retroactively available to employees who retired on or after April 1, 2009, meaning that plaintiff retired one day too soon to participate.

{¶5} Plaintiff brings this claim for violation of the Family and Medical Leave Act of 1993 (FMLA), discrimination pursuant to R.C. 4112.02 on the basis of age and disability, fraud, breach of fiduciary duty, intentional infliction of emotional distress, and civil conspiracy.

**FMLA**

{¶6} "The FMLA entitles qualifying employees to up to twelve weeks of unpaid leave each year if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Walton v. Ford Motor Co.* (C.A.6, 2005), 424 F.3d 481, 485, quoting 29 U.S.C. 2612(a)(1)(D).  FMLA leave may be taken by an eligible employee with a serious health

condition "intermittently or on a reduced leave schedule when medically necessary." 29 U.S.C. 2612(b)(1).

{¶7} In order for an employee to establish that an employer interfered with her rights under the FMLA, the employee must show that: "(1) [she] was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of [her] intention to take leave; and (5) the employer denied the employee FMLA benefits to which [she] was entitled." *Walton*, supra.

{¶8} The central issue with respect to plaintiff's FMLA claim is whether she was denied benefits to which she was entitled. In support of its motion, defendant submitted the affidavit of its Leave and Disability Coordinator, Jamie Henne. Henne avers that employees of defendant who sought FMLA leave were required to submit both a request form and a supporting medical certification from the employee's health care provider. See 29 C.F.R. 825.305, et seq.

{¶9} There is no dispute that plaintiff submitted the request form to Dr. Hamilton on November 17, 2008, requesting FMLA leave from January 1, 2009, to May 31, 2009. In opposition to defendant's motion, plaintiff submitted her own affidavit wherein she states that John Bale, the Associate Dean for Fiscal Affairs in the Boonshoft School of Medicine, spoke with her by telephone on November 26, 2008, and "denied" the latter two months of her request, stating that she could only take FMLA leave until March 31, 2009. The court notes that the period from January 1 to March 31 was approximately 12 weeks, and that the request form submitted by plaintiff sought leave over a period exceeding the 12 weeks permitted by the FMLA, without specifying that intermittent leave was sought.

{¶10} In any event, plaintiff's alleged conversation with Bale occurred prior to the submission of her of medical certification, which defendant received on December 1, 2008. Attached to Henne's affidavit is an authenticated copy of the medical certification,

wherein plaintiff's physician certified that plaintiff needed four to six months of intermittent leave for medical treatment. Henne states in her affidavit that on December 13, 2008, defendant issued a written decision granting plaintiff intermittent leave as specified by plaintiff's physician, running from the date that the physician signed the certification, November 25, 2008, until May 31, 2009, a period of just over six months.

{¶11} The affidavit testimony and documents submitted by defendant show that defendant granted the full amount of FMLA leave that plaintiff's physician certified she was entitled to, and plaintiff has not presented any evidence to demonstrate otherwise. Accordingly, reasonable minds can only conclude that plaintiff was not denied FMLA benefits to which she was entitled.

**FRAUD**

{¶12} "Fraud is defined as: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance." *Martin v. Ohio State Univ. Found.* (2000), 139 Ohio App.3d 89, 98.

{¶13} Plaintiff alleges that defendant fraudulently misrepresented both her sick leave benefits and the availability of any early retirement programs. With respect to sick leave, plaintiff avers in her affidavit that Bale and other employees of defendant informed her that she could not use her "accrued sick leave time to extend [her] tenure," and also informed her that, upon retirement, she could only receive payment for a portion of her accrued sick leave.

{¶14} In support of its motion, defendant submitted Bale's affidavit, wherein he states, in part: "I advised [plaintiff], among other things, that upon her retirement, she

would be paid for her remaining vacation and sick leave balances up to a certain maximum number of hours for each.  At that time, [plaintiff] had a significant number of sick leave hours.  I explained that in accordance with University policy that she would be paid for 25% of her sick leave up to a maximum of 30 days (240 hours).  [Plaintiff] was unhappy about this and inquired about the possibility of using sick leave to extend her retirement date.  I explained to her that University policy does not allow an individual to extend retirement by using his/her remaining leave balances."

{¶15} While it is clear that plaintiff believes defendant should have allowed her to extend her retirement date by utilizing sick leave and that defendant should have compensated her for the balance of her accrued sick leave upon retirement, she has presented no evidence to dispute Bale's testimony that defendant's policies do not permit such practices.  Accordingly, the only reasonable conclusion to be drawn is that Bale did not misrepresent defendant's policies concerning sick leave benefits.

{¶16} With respect to early retirement programs, plaintiff states in her affidavit that she asked employees of defendant, including Bale, about the availability of any early retirement or similar programs and was told several times that none were known.  There is no dispute that in June 2009, more than two months after plaintiff retired, defendant's board of trustees approved and announced the ESP.  Bale states in his affidavit, however, that he and other employees in the school of medicine had no knowledge of the ESP until about a week before it was announced by the board of trustees.  Based upon Bale's testimony, and the lack of any evidence to suggest that the ESP was even contemplated by defendant at the time when plaintiff was making her retirement plans, reasonable minds can only conclude that defendant's employees made no misrepresentations to plaintiff regarding the ESP.  Accordingly, defendant is entitled to judgment as a matter of law on plaintiff's claim of fraud.

{¶17} Moreover, inasmuch as plaintiff's claim for breach of fiduciary duty is similarly premised upon the theory that defendant owed her a duty to disclose the ESP and failed to do so, defendant is also entitled to judgment on that claim.

**UNLAWFUL DISCRIMINATION**

{¶18} Plaintiff alleges that defendant discriminated against her on the basis of age and disability by forcing her to retire earlier than she wanted to, and by subjecting her to a hostile work environment.

{¶19} R.C. 4112.02 provides, in part: "It shall be an unlawful discriminatory practice: (A) For any employer, because of the disability, [or] age * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶20} Absent evidence of discriminatory intent, Ohio courts resolve claims of employment discrimination using the evidentiary framework established by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792. See *Canady v. Rekau & Rekau, Inc.*, Franklin App. No. 09AP-32, 2009-Ohio-4974, ¶22. In order to establish a prima facie case of indirect employment discrimination based upon either age or disability, plaintiff must demonstrate, inter alia, that defendant subjected her to an adverse employment action.  See *Burzynski v. Cohen* (C.A.6, 2001), 264 F.3d 611, 622; *Peters v. Ohio Dept. of Natural Resources*, Franklin App. No. 03AP-350, 2003-Ohio-5895, ¶22.  To that end, plaintiff alleges that defendant constructively terminated her employment two months earlier than she intended, in that the disposition of her FMLA and sick leave benefits forced her to retire on March 31, 2009, rather than May 31, 2009.

{¶21} "The test for determining whether an employee was constructively discharged is whether the employer's actions made working conditions so intolerable

that a reasonable person under the circumstances would have felt compelled to resign." *Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 1996-Ohio-265, paragraph four of the syllabus. As previously stated, reasonable minds can only conclude that defendant granted plaintiff the full amount of FMLA leave certified by her physician, and that defendant's policy on sick leave did not allow any employee to extend his or her retirement date by utilizing sick leave at the end of the employee's tenure. Plaintiff has provided no evidence of any other circumstances that would compel a reasonable person in her position to resign. Therefore, the only reasonable conclusion is that defendant did not constructively terminate plaintiff's employment, and plaintiff thus cannot prove a prima facie case of employment discrimination.

**{¶22}** Furthermore, to the extent that plaintiff also couches her claim of discrimination as arising under a "hostile work environment" theory, plaintiff has failed to present any evidence of the type of conduct necessary to prevail on such a theory, and both Bale and Henne aver that plaintiff was at all times treated courteously, respectfully, and without regard for her age or disability.

**{¶23}** Accordingly, defendant is entitled to judgment as a matter of law on plaintiff's claim of unlawful discrimination under R.C. 4112.02.


**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**{¶24}** The elements of intentional infliction of emotional distress are that "(1) defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious." *Hanly v. Riverside Methodist Hosps.* (1991), 78 Ohio App.3d 73, 82.

**{¶25}** The only evidence plaintiff has presented of emotional distress is a statement in her affidavit relating that in June 2009, she received paperwork from

defendant describing the ESP and she learned at that time that she retired one day too early to be included in the program.  According to plaintiff, this caused her "further insult and emotional injury."

{¶26} Upon review, reasonable minds can only conclude that the alleged conduct of defendant is not of the extreme and outrageous character required to prevail upon a claim for intentional infliction of emotional distress.  See *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 374.  Further, a plaintiff asserting such a claim must present "some 'guarantee of genuineness'" in support thereof, such as an expert opinion or the testimony of lay witnesses who are acquainted with the plaintiff to prevent summary judgment in favor of defendant.  *Powell v. Grant Med. Ctr.*, 148 Ohio App.3d 1, 6, 2002-Ohio-443, quoting *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 76.  Accordingly, plaintiff's claim must fail as a matter of law.

## CIVIL CONSPIRACY

{¶27} "'Civil conspiracy' has been defined as 'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419, 1995-Ohio-61, quoting *LeFort v. Century 21-Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 126.  "An underlying unlawful act is required before a civil conspiracy claim can succeed." *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475, 1998-Ohio-294.

{¶28} According to the complaint, plaintiff's claim for civil conspiracy is premised upon the alleged fraud and unlawful discrimination discussed above.  However, as previously stated, defendant is entitled to judgment as a matter of law on those and indeed all of plaintiff's other claims in this action.  Therefore, plaintiff cannot demonstrate an unlawful act sufficient to support a civil conspiracy claim.  Moreover,

plaintiff has presented no evidence from which it may be reasonably inferred that defendant's employees acted with malice.

{¶29} For the foregoing reasons, the court finds that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment shall be granted.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

LINDA STANCHINA

    Plaintiff

    v.

WRIGHT STATE UNIVERSITY

    Defendant

Case No. 2010-11358

Judge Alan C. Travis

<u>JUDGMENT ENTRY</u>

{¶30} A non-oral hearing was conducted in this case upon defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

 

 

_____
ALAN C. TRAVIS
Judge

cc:

Mark J. Bamberger
8 South 3rd Street
Tipp City, Ohio 45371

Velda K. Hofacker
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

RCV/dms
Filed January 6, 2012
To S.C. reporter March 23, 2012